IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

CARR SMITH, INDIVIDUALLY
AND AS NEXT FRIEND OF
D.M. AND C.W., MINOR CHILDREN,
          Plaintiffs,

V.                              Civil Action No. **3:23-cv-00004**

                                     Jury

CITY OF GALVESTON;
UNKNOWN OFFICERS
OF THE GALVESTON POLICE DEPARTMENT,
          Defendants.

### PLAINTIFF, CARR SMITH, INDIVIDUALLY AND AS NEXT FRIEND OF D.M. AND C.W., MINOR CHILDREN'S, ORIGINAL COMPLAINT

Plaintiff, Carr Smith, individually and as next friend of D.M. and C.W., minor children, brings this action against the City of Galveston, Texas, and officers of the Galveston Police Department. Plaintiff brings suit, individually and as next friend, based upon violations of the civil rights of Plaintiff; D.M., and C.W. Plaintiff respectfully submits to the Court as follows.

    I.    JURISDICTION AND VENUE

1. Jurisdiction is invoked under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 1983.

2. Plaintiff asserts violation of D.M.'s constitutional rights, pursuant to the Fourth and/or Fifth and Fourteenth Amendments to the United States Constitution, including excessive force; wrongful arrest; wrongful imprisonment.

3. Plaintiff asserts violation of C.W.'s constitutional rights, pursuant to the Fourth and/or Fifth and Fourteenth Amendments to the United States Constitution: wrongful detention.

4. Plaintiff asserts violation of Plaintiff's constitutional rights, pursuant to the Fourth and/or Fifth and Fourteenth Amendments to the United States Constitution: wrongful detention.

5. The underlying events occurred in the City of Galveston, Texas, which lies within the confines of the Southern District of Texas.

II. PARTIES

6. Plaintiff Carr Smith is a resident of Galveston County, Texas.

7. D.M., a minor child, is Plaintiff Carr Smith's son, and is a resident of Galveston County, Texas; at the time of the occurrences giving rise to this suit, D.M. was fourteen (14) years old.

8. C.W., a minor child, is Plaintiff Carr Smith's son, and is a resident of Galveston County, Texas; at the time of the occurrences giving rise to this suit, C.W. was twelve (12) years old.

9. The City of Galveston, Texas is a municipal corporation in the State of Texas.

10. Unknown officers of the Galveston Police Department, at all times relevant to this action, were employed by the City of Galveston.

III. UNDERLYING FACTS

11. On the evening of December 28, 2020, fourteen-year-old D.M. was playing outside with his younger brother, twelve-year-old C.W., and some friends; the children were playing hide-and-seek.

12. December 28, 2020 was a Monday, but fell during the holiday break from school; D.M. and C.W. played outside until around 9:00 p.m., at which time they went inside.

13. After coming inside, D.M. ate, played a video game, got on his phone for a while, and then went to sleep.

14. Sometime during the late evening hours of December 28, 2020, 17-year-old Montrell Grimes was shot; he later died at UTMB hospital as a result of the gunshot wounds.

15. According to a news report published on December 29, 2020, Galveston Police were asking the public for "any information that could help find the person" responsible for shooting Montrell Grimes; according to the news report, GPD believed "an unidentified man approached Grimes' car, pulled out a handgun, and began firing into the teen's vehicle."[1]

16. Based upon information and belief, said "unidentified man" had been wearing a black pants, a black "hoodie" sweatshirt, a black hat, and black gloves.

---

[1] ABC Eyewitness News, Tuesday, December 29, 2020, Injured Teen goes to Galveston PD for help before dying at hospital: https://abc13.com/galveston-teen-montrell-grimes-shot-killed-and-in-his-car/9180053/ (visited December 28, 2022).

17. On the evening of December 28, 2022, fourteen-year-old D.M. had been wearing bright red basketball shorts, and a black t-shirt with a bright red and white "stacks" insignia; he had not been wearing a hat.

18. D.M. did not shoot Montrell Grimes; D.M. had never even fired a gun; and D.M. was not involved in the shooting of Montrell Grimes in any way.

19. Around three o'clock (3:00) a.m. on the morning of December 29, 2020, Plaintiff Carr Smith (Smith"), D.M. and C.W. were all asleep in bed.

20. Plaintiff Carr Smith ("Smith") was awakened by loud banging on her front door; she answered the door to find a group of Galveston Police Department ("GPD") officers standing outside.

21. GPD officers informed Smith that they needed to ask her son D.M. some questions.

22. Smith requested that the officers come back later in the morning.

23. The officers refused, asking to come inside; Smith told them no, she needed them to come back at a later time.

24. GPD officers disregarded Smith's refusal.

25. Approximately eight (8) GPD officers rushed into Smith's home.

26. Fourteen-year-old D.M. was fast asleep when officers burst into his bedroom, picking him up, pinning his hands behind his back, and carrying him to the living room.

27. D.M. had been asleep, wearing only shorts, when officers removed him from his bed.

28. Officers put D.M. down in the living room and told him to walk outside.

29. Officers did not permit D.M. to put on a shirt, pants, socks or shoes before walking outside.

30. Officers instructed Plaintiff to sit down and not to move, or she would be arrested.

31. Once outside, officers told D.M. they needed to take him in for questioning.

32. D.M. told officers that he did not want to go with them; at that time, one of the officers told another to "put him on the ground."

33. Another officer then pushed D.M. to the ground, causing D.M. to strike his head and arm on glass and rocks.

34. Officers then placed D.M. under arrest, taking him into custody.

35. Immediately after the early morning arrest, officers placed D.M. into a holding area and interrogated him for several hours, from around 4:00 a.m. until approximately 8:00 or 9:00 a.m.

36. Officers interrogated D.M. without parental consent, without a parent present, and without counsel.

37. After officers took D.M. into custody, two officers remained at Plaintiff's home.

38. The officers asked Plaintiff for consent to search Plaintiff's home.

39. When Plaintiff declined to provide consent, one of the officers responded "oh, you're going to play like that?"

40. Pending issuance of a warrant, the officers ordered Plaintiff and C.W. to sit on the sofa in the living room.

41. Officers would not allow Plaintiff and C.W. to get up from the sofa, threatening arrest, stating "we can do it this way, or we can go downtown."

42. Plaintiff and C.W. were forced to remain sitting, guarded by officers, for over six hours.

43. When Plaintiff asked whether she could use the restroom, officers instructed that she could only do so if she left the restroom door partially open and refused to allow her to retrieve some necessary feminine hygiene items.

44. Two GPD officers remained guarding Plaintiff and C.W. until approximately 10:30 a.m. on December 29, 2020, at which time they obtained a warrant to search Plaintiff's home.

45. During the day following D.M.'s arrest, Plaintiff observed visible injuries to D.M. which appeared to have been caused by a direct blow to D.M.'s face.

46. D.M. was charged with murder.

47. On January 4, 2021, Plaintiff was evicted from her home, because of D.M.'s arrest.

48. Charges against D.M. were dismissed.

49. D.M. was incarcerated from December 29 through April 5, 2020.

50. After D.M.'s arrest, he suffered severe depression and anxiety, necessitating medical treatment during his incarceration.

51. Prior to the December 29, 2020 arrest, D.M. did not suffer from depression and anxiety.

52. Plaintiff had a difficult time re-enrolling D.M. in school after his release; his previous school did not want to accept him for enrollment, based on the arrest, charge, and period of incarceration.

53. Prior to the arrest, D.M. was generally well-liked amongst his peers/at school.

54. After D.M.'s release, his peers were afraid to be around him, based on the fact that he had been arrested and charged with murder.

55. After D.M.'s release, he continued suffer from severe depression and anxiety, and continued to need medical treatment.

56. After D.M.'s arrest and detention by police, C.W. began to experience severe anxiety.

57. C.W. had trouble sleeping, and was too afraid to sleep alone.

58. C.W. continues to experience anxiety and post-traumatic stress as a result of the events on December 29, 2020.

59. Plaintiff has struggled emotionally and financially as a result of D.M.'s arrest.

60. Prior to D.M.'s arrest, Plaintiff's housing expenses were subsidized.

61. Once Plaintiff was evicted, due to D.M.'s arrest, her housing expenses increased exponentially; Plaintiff's monthly rent amount is now roughly equivalent to one-half of her monthly income.

IV. FOURTH AMENDMENT/FIFTH & FOURTEENTH AMENDMENT CLAIMS

62. D.M. suffered injuries as a result of the officers' use of force; the degree of force exerted was clearly excessive and unreasonable.

63. D.M. suffered injuries as a result of wrongful arrest.

64. D.M. suffered injuries as a result of wrongful imprisonment.

65. C.W. suffered injuries as a result of wrongful detention/arrest.

66. Plaintiff suffered injuries as a result of wrongful detention/arrest.

67. Plaintiff suffered injuries as a result of the excessive force exerted against D.M.

68. Plaintiff suffered injuries as a result of the wrongful arrest of D.M.

69. The hereinabove injuries were caused by Defendant officers' acts, including unlawfully entering Plaintiff's home; using excessive force against D.M.; unlawfully arresting D.M.; unlawfully detaining Plaintiff and C.W.; and unlawfully imprisoning D.M.

70. Defendants lacked probable cause to enter Plaintiff's home without a warrant.

71. Defendants lacked probable cause to arrest D.M.

72. Defendants lacked reasonable suspicion and/or probable cause to detain Plaintiff and C.W.

73. Charges against D.M. were dismissed.

## V. COURSE AND SCOPE, COLOR OF LAW

74. At all times materials to this cause of action, Defendants, unknown GPD officers, were employed by Defendant City of Galveston.

75. At all times material to this action, said unknown GPD officers were working under color of law.

## VI. POLICY, CUSTOM, PRACTICE – 42 U.S.C. § 1983

76. Defendant City of Galveston is a municipal corporation under the laws of the State of Texas.

77. The use of excessive force against D.M., and D.M.'s unlawful arrest, resulted from the City of Galveston's policy, custom and/or practice of targeting certain young people for criminal suspicion, arrest, and charge, particularly those who are poor or members of a racial minority, without probable cause.

78. The unlawful detention of Plaintiff and C.W. was the result of the City of Galveston's policy, custom, and/or practice of detaining poor and/or minority individuals, without reasonable suspicion or probable cause.

79. The use of excessive force against D.M., and the unlawful arrest and unlawful imprisonment of D.M., are the result of the City of Galveston's failure to train its officers in relevant respects.

80. These policies, practices and customs are the moving force for the violations of D.M.'s, C.W.'s, and Plaintiff's known constitutional rights.

81. Defendant City of Galveston is jointly and severally liable for the violations of D.M.'s, C.W.'s, and Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

## VII. CLAIMS FOR DAMAGES

82. Plaintiff, individually and as next of friend for D.M. and C.W, sues for the following:
    a. compensatory damages;

    b. punitive damages;

    c. reasonable and necessary attorneys' fees

    d. pre- and post-judgment interest;

    e. costs of court.

VIII. <u>PRAYER AND CONCLUSION/ A JURY TRIAL IS DEMANDED</u>

83. Plaintiff, individually and as next friend of D.M. and C.W., prays that Defendants be cited to appear and answer herein and that, after due proceedings be had, that the claims raised herein be tried by jury.

84. Plaintiff, individually and as next friend of D.M. and C.W., prays for all relief available, in law or in equity.

                                              Respectfully submitted,

                                              /s/ *Ellyn J. Clevenger*
Ellyn J. Clevenger
Attorney-In-Charge
Federal I.D. No. 3597745
State Bar No. 24058662
1115 Moody Avenue
Galveston, Texas 77550
409.621.6440
ATTORNEY FOR PLAINTIFF
    CARR SMITH, INDIVIDUALLY
    AND AS NEXT FRIEND OF
    D.M. AND C.W., MINOR CHILDREN